UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALPHONSO MOODY,

            Movant,

   -vs-

UNITED STATES OF AMERICA,

            Respondent.

_____

**DECISION AND ORDER**
**Civil Case**
**No. 1:16-cv-00472-MAT**


**Criminal Case**
**No. 1:07-cr-00139-MAT**

## I.   Introduction

Represented by counsel, Alphonso Moody ("Moody") has filed a motion to set aside or correct his sentence under 28 U.S.C. § 2255 ("§ 2255") pursuant to <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015 ("<u>Johnson II</u>")), and a supplemental § 2255 motion pursuant to <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019) ("<u>Davis</u>").[1]  For the reasons discussed below, Moody's § 2255 motion and supplemental § 2255 motion are denied.

## II.  Factual Background and Procedural History

In an Indictment returned on June 20, 2007, Moody was charged, along with co-defendants Jermaine Ellison and Gary N. James, Jr., of violating a number of federal criminal statutes in connection with their armed robbery of a person cooperating with federal law

---

[1]

In <u>Johnson II</u>, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA") is void for vagueness. 135 S. Ct. at 2558-59. In <u>Davis</u>, the Supreme Court held that the similarly worded residual clause in 18 U.S.C. § 924(c)(3)(B) is also void for vagueness. <u>Davis</u>, 139 S. Ct. at 2336.

enforcement. The victim of the robbery was in possession of $1,500 in government funds intended to be used to purchase a TEC-DC9, 9 mm. caliber semiautomatic pistol from Moody and his co-defendants. However, Moody and his co-defendants determined that they were going to rob the cooperator of the $1,500 instead of selling him the weapon. The robbery took place on January 11, 2007, in a Wal-Mart parking lot in Niagara Falls. One co-defendant acted as the driver and lookout, and Moody and the other co-defendant effectuated the robbery. During the course of the robbery, this co-defendant shot the cooperator in the left leg. Then, while attempting to flee the scene, this co-defendant fired one shot from the pistol he was carrying in the direction of the law enforcement officers, narrowly missing them.

Moody was named in Counts 1, 2, 3, 4, 5, 6, and 10 of the Indictment. Of particular relevance here are Counts 1 and 3, to which Moody eventually pleaded guilty. Count 1 charged that

> [o]n or about the 11th day of January, 2007, in Niagara Falls, New York, in the Western District of New York, the defendants, GARY N. JAMES, Jr., ALPHONSO MOODY and JERMAINE G. ELLISON, did assault a person known to the Grand Jury, said person having lawful charge, control and custody of money of the United States, with the intent to rob, steal and purloin said money of the United States, and did rob and attempt to rob such person known to the Grand Jury, said person having lawful charge, control and custody of money of the United States, of said money of the United States, and in effecting and attempting to effect such robbery, the defendants, GARY N. JAMES, Jr., ALPHONSO MOODY and JERMAINE G. ELLISON, did wound said person known to the Grand Jury and put the life of said person known to the Grand Jury in jeopardy by the use of a dangerous weapon, that is, an Iver Johnson Arms, Inc.,

Model TP22, .22 caliber, semiautomatic pistol, bearing
serial number AE73105.

All in violation of Title 18, United States Code,
Sections 2114(a) and 2.

Indictment at 1-2 (ECF #18).

Count 3 charged as follows:

On or about the 11th day of January, 2007, in Niagara
Falls, New York, in the Western District of New York, the
defendants, GARY N. JAMES, Jr., ALPHONSO MOODY and
JERMAINE G. ELLISON, during and in relation to crimes of
violence for which they may be prosecuted in a court of
the United States, namely, violations of Title 18, United
States Code, Sections 2114(a) and 371 committed in the
manner set forth in Counts 1 and 2 of this Indictment,
the allegations of which are incorporated herein by
reference, did knowingly and unlawfully use and carry,
and in furtherance of said crimes of violence did
knowingly and unlawfully possess, firearms, to wit, an
Intratec, Model TEC-DC9, 9 mm. caliber semiautomatic
pistol bearing serial number D127408 and an Iver Johnson
Arms, Inc., Model TP22, .22 caliber, semiautomatic
pistol, bearing serial number AE73105, and in the course
of said carrying, use and possession did discharge the
Iver Johnson Arms, Inc., Model TP22, .22 caliber,
semiautomatic pistol, bearing serial number AE73105.

All in violation of Title 18, United States Code,
Sections 924(c)(1)(A)(iii) and 2.

Indictment at 5-6 (ECF #18).

Moody entered into a Plea Agreement (ECF #67) dated November

10, 2008, pursuant to which he agreed to plead guilty to "Count 1

of the Indictment, which charges a violation of Title 18, United

States Code, Sections 2114(a) and 2, (Assault with Intent to Rob

Money of the United States), which carries a maximum possible

sentence of a term of imprisonment of 25 years . . . ; and . . .

Count 3 of the Indictment, which charges a violation of Title 18,

United States Code, Sections 924 (c) (1) (A) (iii) and 2 (use and carrying of a firearm during and in relation to a crime of violence and the unlawful possession of a firearm in furtherance of a crime of violence) which carries a mandatory term of imprisonment of at least 10 years and up to life, said sentence to be imposed consecutive to any other sentence, . . . and a term of supervised release of 5 years." Plea Agreement at 1-2 (ECF #67).

Moody and the Government "agree[d] to [certain] facts, which form[ed] the basis for the entry of the plea of guilty including relevant conduct," and which included the following:

> d) At approximately 8:00 p.m. [on January 11, 2007,] [Moody], James and Ellison arrived at the Wal-Mart Parking lot, in the vehicle being driven by Ellison. Upon arrival at the Wal-Mart parking lot, [Moody], James and Ellison went to the front of the Wal-Mart. James went to the [confidential informant] CI's car and returned with the CI. Ellison had left and entered the Wal-Mart, while [Moody] had remained and met James and the CI. James retrieved the above described Tec-9 9 from Ellison's car, and James, [Moody] and the CI went to and entered the CI's vehicle. While in the vehicle, James displayed the Tec-9 to the CI and when the CI produced the money to purchase the firearm, James grabbed the CI from behind, pointed the above-described Iver Johnson pistol at the CI's head and demanded the money. At this time [Moody] forcibly took the money and a cell phone from the CI. After [Moody] took the money James shot the CI in the left leg.

> e) After shooting the CI, James and [Moody] exited the vehicle, as ICE agents, ATF agents and Niagara Falls Police officers converged upon the scene. The defendant fled from the police and before he was caught, threw the money that he had taken from the CI away. . . . As James was running from the vehicle, attempting to escape, ICE and ATF agents, who were wearing clothing emblazoned with the word "Police" in large letters, exited their vehicles, yelled words to the effect of "Police" and

-4-

"Stop, Police" and began to pursue James. James at this
time turned and, with a depraved indifference to human
life, fired one shot from the Iver Johnson pistol at the
law enforcement officers who were pursuing him. The
bullet struck the vehicle that the ICE and ATF agents
were exiting, on the front drivers side panel about 3
inches from Special Agent Jeff Brannigan, who was exiting
the vehicle at the time. The bullet then traveled up and
off the driver's side mirror, again inches from Agent
Brannigan. Agent Huy Khuu, ATF, who was already out of
the vehicle and who had begun to pursue James, was also
in the line of fire and saw the muzzle flash from James'
pistol and heard the projectile go by him.
f) After his arrest, [Moody] stated that he and James
intended to rob the CI, that the James shot the CI and
fired at the law enforcement officers. James admitted
that he, [Moody] and Ellison intended to rob the CI, that
he [i.e., James] had shot the CI and that he had shot at
the law enforcement officers, although he claimed not to
realize that they were law enforcement officers at that
time. . . .

Plea Agreement at 5-7 (ECF #67).

After pleading guilty on November 10, 2008, to Counts 1 and

3, Moody was sentenced on February 24, 2009, to consecutive terms

of 46 months' imprisonment for the conviction on Count 1 and 120

months' imprisonment for the conviction on Count 3. Moody also was

sentenced to concurrent 5-year terms of supervised release on each

conviction.

In his § 2255 motions, Moody notes that Count 1 is the "crime

of violence" on which the validity of his conviction on Count 3

depends. He requests vacatur of the conviction on Count 3 on the

basis that Count 1, charging assault and robbery in violation of

18 U.S.C. § 2114(a) ("§ 2114(a)"), is not a "crime of violence"

within the elements clause of 18 U.S.C. § 924(c)(3)(A), the only

clause under which it can qualify now that the Supreme Court has invalidated the residual clause, § 924(c)(3)(B). Moody further asserts that, if the conviction on Count 3 is vacated, his term of supervised release must be reduced to 3 years because his 5-year term of supervised release was based solely on the Count 3 conviction. Moody notes that the Court has the discretion to further reduce his term of supervision should the 18 U.S.C. § 924(c)(3) conviction be vacated because, in such case, he will have overserved his sentence by 10 years. The Government responds that, notwithstanding <u>Davis</u>, a violation of § 2114(a) remains a crime of violence within the elements clause of 18 U.S.C. § 924(c)(3)(A). Moody has not filed a reply.

**III. Scope of Review Under § 2255**

Section 2255 provides, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court may dismiss a Section 2255 motion without a hearing if the motion and the record "conclusively show[,]" <u>id.</u>, that the movant is not

entitled to relief. See, e.g., Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001) (district court was not required to hold full testimonial hearing before deciding federal prisoner's motion to vacate, set aside or correct sentence based on claim of ineffective assistance of counsel alleging that counsel prevented him from exercising his right to testify on his own behalf, where prisoner made only general allegation, and record was supplemented by detailed affidavit from trial counsel credibly describing circumstances concerning prisoner's failure to testify).

## IV.  Merits of the § 2255 Motions

### A.    Section 924(c)(1) and Davis

Section 924(c)(1)(A) provides for a sentencing enhancement when a defendant "uses or a carries a firearm" or "possesses a firearm" "in furtherance of" "a crime of violence." 18 U.S.C. § 924(c)(1)(A). "For purposes of [Section 924(c)(1)(A)] the term 'crime of violence' means an offense that is a felony that and--

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

18 U.S.C. § 924(c)(3). Subsection (A) of the Section 924(c)(3) is known as the "elements clause," while Subsection (B) is called the "residual clause." Knight v. United States, 936 F.3d 495, 497 (6th Cir. 2019). The Supreme Court recently invalidated the residual

-7-

clause, § 924(c)(3)(B), as unconstitutionally vague. <u>Davis</u>, 139 S. Ct. at 2336. But an offense still qualifies as a "crime of violence" if it satisfies the elements clause, § 924(c)(3)(A). <u>See</u>, <u>e.g.</u>, <u>Knight</u>, 936 F.3d at 497 (holding that assault and robbery of a postal employee under § 2114(a) constituted a "crime of violence" because it satisfied the elements clause of § 924(c)(3)).

**B.   Is § 2114(a) a "Crime of Violence"?**

Courts use a "categorical approach" to determine whether an offense constitutes a "crime of violence" for purposes of 18 U.S.C. § 924(c)(3). <u>United States v. Rafidi</u>, 829 F.3d 437, 444 (6th Cir. 2016) (collecting cases); <u>see also</u> <u>Davis</u>, 139 S. Ct. at 2330 ("To hold, as the government urges, that § 16(b) requires the categorical approach while § 924(c)(3)(B) requires the case-specific approach would make a hash of the federal criminal code. Section 924(c)(3)(B)'s history provides still further evidence that it carries the same categorical-approach command as § 16(b)").

The categorical approach "focus[es] solely on whether the elements of the crime of conviction . . . while ignoring the particular facts of the case." <u>Mathis v. United States</u>, 136 S. Ct. 2243, 2248 (2016) (citing <u>Taylor v. United States</u>, 495 U.S. 575, 600-01 (1990)). "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to

sustain a conviction.'" Id. (quoting Black's Law Dictionary 634 (10th ed. 2014)). "Even when there is 'little doubt' that the circumstances of a defendant's violation were violent, 'the question is whether [the statute he violated], as a categorical matter,' is a crime of violence." United States v. Denson, 728 F.3d 603, 608 (6th Cir. 2013) (quoting Sykes v. United States, 131 S. Ct. 2267, 2272 (2011), overruled on other grounds by Johnson II, 135 S. Ct. at 2563).

Courts use "a variant of this method—labeled (not very inventively) the 'modified categorical approach'—when a prior conviction is for violating a so-called 'divisible statute,' " which "sets out one or more elements of the offense in the alternative." Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). The modified categorical approach is a "tool" used in a "narrow range of cases" to "identify the relevant element" of which a defendant was necessarily convicted so long as the conviction was under "a statute with multiple alternative[ ]" elements. Id. at 2287 (internal quotation marks omitted). When utilizing the modified categorical approach, courts may "consult a limited class of documents . . . to determine which alternative [element] formed the basis of the defendant's prior conviction." Descamps, 133 S. Ct. at 2281; see also Shepard v. United States, 544 U.S. 13, 16–17 (2005).

Where the defendant has pleaded guilty, these so-called

*Shepard* documents may include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. The purpose of the modified categorical approach is "to determine whether [a] . . . guilty plea necessarily admitted[,]" *id.*, the elements of a predicate offense. See also *id.* at 20-21, 26.

In Count I, Moody was charged with assault and robbery in violation of 18 U.S.C. § 2114(a), which provides as follows:

> (a) Assault.--A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

18 U.S.C. § 2114.

The first question is whether the statute is divisible. *E.g.*, *Knight*, 936 F.3d at 498. "Thus, the threshold inquiry is whether the statute underlying the . . . conviction lists elements of the crime, or alternative means of committing the crime." *United States v. Walker*, 314 F. Supp.3d 400, 413 (E.D.N.Y. 2018). "If they are elements, and create separate criminal acts, the court may apply the modified categorical approach at sentencing to

'discover which of the enumerative alternative [elements] played a part in the defendant's prior conviction.'" Id. (quoting Mathis, 136 S. Ct. at 2256). The Government argues that the statute is divisible and contains both an aggravated and non-aggravated offense. Government's Response ("Gov't Resp.") at 4-5 (citing, inter alia, Knight, 936 F.3d at 498-99). Moody cites case law regarding application of the modified categorical approach but does not take a position as to whether the statute is divisible.

The Government points out that, earlier this year, the Sixth Circuit held that § 2114(a) is divisible and "sets out a separate aggravated offense" which "carries both an additional element—'wound[ing]' the victim or putting the victim's 'life in jeopardy by the use of a dangerous weapon'—and an increased maximum punishment of twenty-five years' imprisonment." Knight, 936 F.3d at 498-99 (alteration in original). The Seventh Circuit and the Eleventh Circuit also have held that § 2114(a) is divisible, and that the aggravated offense is a crime of violence within the elements clause of § 924(c)(3)(A). United States v. Enoch, 865 F.3d 575, 579-80, 582 (7th Cir. 2017), cert. denied, 138 S. Ct. 1015 (2018); In re Watts, 829 F.3d 1287, 1289-90 (11th Cir. 2016).

The Court agrees with Knight, Enoch, and Watts that the statute describes two levels of offenses subject to different punishments. First, it describes an unaggravated or basic version

of the crime, punishable by 10 years, which is committed by robbing, attempting to rob, or assaulting with the intent to rob, steal, or purloin. 18 U.S.C. § 2114(a). Second, in the language after the semi-colon that begins with "and if[,]" it describes an aggravated crime punishable by 25 years, which is committed when, in the course of committing the basic offense, the defendant wounds the victim or put his life in jeopardy by use of a dangerous weapon. Because the statute is divisible, the Court should consult "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [Moody] was convicted of." Mathis, 136 S. Ct. at 2249.

Moody does not acknowledge Knight, Enoch, or Watts; nor does he address the argument that § 2114(a) sets forth two different substantive offenses. Instead, Moody argues that review of the Plea Agreement demonstrates he was not actually convicted of a substantive violation of § 2114(a) but was convicted of only a conspiracy to violate § 2114(a). He asserts that "[a]lthough paragraph 1 of the plea agreement suggests [he] pled guilty to Counts 1 (assault with intent to rob) and 3 (use of a firearm in furtherance of a crime of violence), the elements in the plea agreement establish only that he admitted to conspiring to violate § 2114." Supp. § 2255 Motion at 4-5 (footnote omitted). Moody continues, "Section II of the agreement[,] 'Elements of the Crime

-12-

and Factual Basis,' outline the crime of <u>conspiracy</u> to assault with intent to rob, not the substantive offense." <u>Id.</u> at 5 (emphasis in original). Moody notes that, as recited in the Plea Agreement, the four elements of the offense charged as Count 1 to which he pleaded guilty were as follows:

 a. that the defendant assaulted, or aided and abetted or conspired with another who assaulted, a person, with the intent to rob or steal money;

 b. that such person at the time of the assault had lawful charge of money of the United States;

 c. that the defendant, or another whom the defendant aided and abetted or conspired with, robbed such person of the money of the United States; and

 d. that the defendant, or another whom the defendant aided and abetted or conspired with, in the course of the robbery put such person's life in jeopardy by use of a dangerous weapon.

Plea Agreement at 3, § II, ¶ 5 (Count 1). Moody contends that elements set forth under Count 1 "clearly establish" that he pleaded guilty to <u>conspiring</u> to commit assault with intent to rob, not to committing the substantive offense of assault with intent to rob.

 Moody contrasts the language of his Plea Agreement with that of his co-defendant James, who also pleaded guilty to Count 1 (assault with intent to rob), and admitted to the following elements:

 a. that the defendant [James] assaulted a person, with the intent to rob or steal money;

 b. that such person at the time of the assault had lawful charge of the money of the United States;

 c. that the defendant robbed such person of the United States; and

 d. that the defendant in the course of the robbery put

> such person's life in jeopardy by use of a
> dangerous weapon.

Supp. § 2255 Motion at 6 (quoting Plea Agreement of Gary James, ¶ 4, ECF #59, <u>United States v. James</u>, No. O7-cr-000139 (W.D.N.Y. Sept. 10, 2008)). Moody asserts that while his Plea Agreement identifies Count 1 of the indictment as one of the counts to which he was pleading guilty, the Plea Agreement instead sets forth elements of a conspiracy to commit a violation of 18 U.S.C. § 2114(a), which was charged as Count 2 of the indictment.

The Government agrees that Count 2 no longer qualifies as a crime of violence but argues that Moody is "twist[ing] the language of the plea agreement to somehow convert [his] guilty plea to the completed robbery" charged in Count 1 to a guilty plea to "a conspiracy to commit the robbery" charged in Count 2, which count is nowhere referenced in the Plea Agreement. <u>See</u> Gov't Resp. at 6. The Government urges that the phrase, "that the defendant, or another whom the defendant aided and abetted or conspired with," in setting forth the elements of Count 1 was simply a means of setting forth that the defendant did not have to personally commit all the elements of the robbery in order to be liable for the robbery's commission. <u>Id.</u> Rather, another individual—here, James—for whom Moody was criminally responsible as an aider or abettor or a co-conspirator, could have committed any or all of the robbery's elements. <u>Id.</u> The Government further asserts that the phrase "or conspired with" was intended to cover Moody's liability for any co-

-14-

conspirator's acts under <u>Pinkerton v. United States</u>, 380 U.S. 640

(1946).[2] Gov't Resp. at 6-7 (citing Modern Federal Jury

Instructions—Criminal § 19.03 (Matthew Bender)). As the Government

points out, similar language was used in the Plea Agreement to set

forth the elements for Count 3,[3] and Moody does not argue that he

pleaded guilty to a conspiracy to commit a violation of §

924(c)(1)(A)(iii). <u>See</u> Gov't Resp. at 7.

While Moody's comparison of his Plea Agreement with that of

his co-defendant, James, has some appeal, his argument falters

because it relies on a cherry-picking of the language of § II,

paragraph 5 of the Plea Agreement. Specifically, he overlooks the

language in subparagraph (a) of paragraph 5 that precedes the "or

aided and abetted or conspired with" language, which sets forth his

liability as a principal, i.e., "the defendant [Moody] assaulted.

---

[2]

"Under <u>Pinkerton</u>, '[o]nce a conspiracy has been established, the criminal liability of its members extends to all acts of wrongdoing occurring during the course of and in furtherance of the conspiracy.'" <u>United States v. Lloyd</u>, 947 F. Supp.2d 259, 266 (E.D.N.Y. 2013) (quoting <u>United States v. Gallerani</u>, 68 F.3d 611, 620 (2d Cir. 1995) (internal quotation marks omitted in original)). "<u>Pinkerton</u> provides that 'a defendant who does not directly commit a substantive offense may nevertheless be liable if the commission of the offense by a co-conspirator in furtherance of the conspiracy was reasonably foreseeable to the defendant as a consequence of their criminal agreement.'" <u>Id.</u> (quoting <u>United States v. Parkes</u>, 497 F.3d 220, 232 (2d Cir. 2007) (quotation marks omitted in original)).

[3]

<u>See</u> Plea Agreement at 3-4, § II, ¶ 5 (Count 3) (listing the elements of Count 3 as follows: "a. that the defendant committed a crime of violence that may be prosecuted in a court of the United States; b. that the defendant, or another whom the defendant aided and abetted or conspired with, in furtherance of that crime of violence, possessed a firearm; or,  c. that the defendant, or another whom the defendant aided and abetted or conspired with, during and in relation to that crime of violence carried or used a firearm; and d. that in the course of that crime of violence the firearm was discharged").

. . ." Plea Agreement at 3, § II, ¶ 5(a) (Count 1). Likewise, Moody ignores the language in subparagraphs (c) and (d) of paragraph 5 that similarly sets forth a theory of principal liability for "robb[ing] the person of the money of the United States" and "put[ting] such person's life in jeopardy by use of a dangerous weapon." Id., ¶(5)(c), (d) (Count 1).

Moreover, the language used in the Plea Agreement to set forth the elements of Count 1 does not track language used in Count 2 of the indictment to charge a violation of conspiracy to commit a violation of 18 U.S.C. § 2114(a). Contrast Plea Agreement, Plea Agreement at 3, § II, ¶ 5(c) (Count 1) ("[T]hat the defendant, or another whom the defendant aided and abetted or conspired with, robbed such person of the money of the United States. . . .") (emphasis supplied); with Indictment at 2 ("[T]he defendants, GARY N. JAMES, Jr., ALPHONSO MOODY and JERMAINE G. ELLISON, did knowingly, willfully and unlawfully combine, conspire and agree together to commit an offense against the United States, namely, to violate Title 18, United States Code, Section 2114(a) in the manner set forth in Count 1 of this Indictment. . . .") (emphasis supplied). The Plea Agreement describes commission of the completed offense of § 2114(a) ("the defendant, or another. . . robbed") while in the language of Count 2, the offense has not been committed (the defendants "conspire[d] . . . to commit an offense"). Consulting the Indictment and Plea Agreement, the Court

concludes that, based on the Indictment and Plea Agreement, both Shepard-approved documents, Moody was convicted of the aggravated offense set forth in § 2114(a).

Because Moody was convicted of the aggravated offense under 18 U.S.C. § 2114(a), the Court "next consider[s] whether that offense is a crime of violence under the elements clause of the definition of crime of violence in § 924(c)(3)(A)[,]" Knight, 936 F.3d at 499, the elements clause. A crime of violence includes "an offense that is a felony and . . . has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). In Knight, which considered whether § 2114(a)'s aggravated offense was a crime of violence under § 924(c)(3)(A), the Sixth Circuit applied the definition of "physical force" set forth in Johnson v. United States, 559 U.S. 133 (2010) ("Johnson I"),[4] that is, "'force capable of causing physical pain or injury.'" Knight, 936 F.3d at 499 (quoting Johnson I, 559 U.S. at 140; citing Rafidi, 829 F.3d at 445 (applying Johnson I's definition of "physical force" to definition of "crime of violence" in § 924(c)(3)(A)). Likewise, the Seventh Circuit, in

---

[4] The Second Circuit has assumed without deciding that Johnson I's physical force definition applies to § 924(c)(3)(A). See United States v. Hill, 832 F.3d 135 (2d Cir. 2016), amended and superseded by 890 F.3d 51, 58 (2d Cir. 2018) ("Assuming arguendo Johnson I's relevance to the construction of § 924(c)(3)(A), 'physical force' as used in the provision at issue here [Hobbs Act robbery] means no more nor less than force capable of causing physical pain or injury to a person or injury to property.") (citing 18 U.S.C. § 924(c)(3) (defining "crime of violence" in relevant part as a felony with an element requiring "use, attempted use, or threatened use of physical force against the person or property of another")) (emphasis omitted), cert. denied, 139 S. Ct. 844 (2019).

considering whether the aggravated offense under § 2114(a) constituted a crime of violence under § 924(c)(3)(A), applied Johnson I's definition of physical force. Enoch, 865 F.3d at 581 (observing that in Johnson I, the Supreme Court interpreted the meaning of "physical force" as "used in a different, but virtually indistinguishable section of 18 U.S.C. § 924") (footnote omitted) (citing Johnson I, 559 U.S. at 138-40).

The Sixth Circuit concluded in Knight that the defendant's conviction for the aggravated offense under § 2114(a) "required at least the threatened use of physical force" since "[t]he requirement that the defendant must assault with attempt to rob, rob, or attempt to rob and in the process 'wound the person . . . or put[ ] his life in jeopardy by use of a dangerous weapon' necessarily requires the use, attempted use, or threatened use of physical force as defined in Johnson I." 936 F.3d at 499. Similarly, the Seventh Circuit held in Enoch that "[t]here can be no doubt that wounding a victim or putting the life of a victim in jeopardy is a violent crime." Enoch, 865 F.3d at 581. "[F]orce capable of wounding another or putting the life of another in jeopardy is a force that is capable of causing injury to another person and therefore qualifies as a crime of violence." Id. (citing Johnson I, 559 U.S. at 140); see also id. at 583-84 (concurring opn.) ("[T]he threat of force sufficient to meet the threshold of pain established by the Supreme Court is inherent in robbery of a

person having custody of the mail or other federal property to the same extent as it is in bank robbery. The snatching of or demand for property as punished by federal criminal law carries with it an implicit threat of at least this level of violence.").

Prior to Enoch and Knight, the Eleventh Circuit concluded that the aggravated offense under § 2114(a) was a crime of violence for purposes of § 924(c)(3)(A). In re Watt, 829 F.3d 1287 (11th Cir. 2016). There, the defendant's "first superseding indictment alleged that he and an unindicted codefendant, 'aiding and abetting one another, did assault Postmaster Brenda Snellen . . . with intent to rob [her] . . . and did rob and attempt to rob said person . . . and, in so doing, . . . put the life of said person in jeopardy by the use of a . . . firearm.'" Id. at 1289 (quoting 18 U.S.C. § 2114(a)(2), 2) (ellipses and alteration in original). Of particular significance here, the Eleventh Circuit determined that the fact "Watt was charged under the aiding and abetting statute is of no moment. . . . Based on the allegations in Watt's indictment, the jury had to have found that he 'assault[ed]' the victim and that her 'life was put in jeopardy,' which satisfies the requirement of the elements clause that the underlying felony offense have 'as an element, the use, attempted use, or threatened use of physical force against the person or property of another,' [18 U.S.C.] § 924(c)(3)(A)." Watt, 829 F.3d at 1289) (citing In re Colon, No. 16-13021-J, 826 F.3d 1301, 1305, 2016 WL 3461009, at *3 (11th Cir.

June 24, 2016) ("A person who aids, abets, counsels, commands, induces or procures the commission of an offense is punishable as a principal," and so "the acts of the principal become those of the aider and abettor as a matter of law.") (internal quotation marks and citations omitted)).

Moody has not presented any argument to rebut these Circuits' analyses, which the Court finds persuasive. See, e.g., Buck v. United States, No. CR-95-00386-PHX-SRB, 2018 WL 6111787, at *5 (D. Ariz. Nov. 1, 2018), report and recommendation adopted, No. CR-95-00386-PHX-SRB, 2018 WL 6110938 (D. Ariz. Nov. 21, 2018) (relying on Enoch to hold that § 2114(a) is divisible and is a crime of violence under the elements clause of § 924(c)(3)(A)); Williams v. United States, No. C16-5559 BHS, 2017 WL 1166141, at *6 (W.D. Wash. Mar. 29, 2017) (holding that § 2114(a) is divisible and that "the aggravated form of § 2114(a) robbery necessarily includes as an element the use, attempted use, or threatened use of force capable of causing physical pain or injury").

For the foregoing reasons, the Court finds that Moody was convicted of the aggravated offense under 18 U.S.C. § 2114(a), and that it constitutes a crime of violence under the elements clause of § 924(c)(3)(A), which has not been affected by Johnson II or Davis. Therefore, the Court has no basis to disturb Moody's conviction on Count 3 under § 924(c)(1)(A)(iii).

## IV. Certificate of Appealability

To obtain a certificate of appealability, a § 2255 movant must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This requires a demonstration that reasonable jurists could conclude that the motion should have been resolved in a different manner, or that the issues presented are adequate to deserve encouragement to proceed further. <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

While Moody has not requested a certificate of appealability, the Court finds that the issues presented are adequate to deserve encouragement to proceed further, insofar as the § 2255 motion presents at least three questions that are unsettled in this Circuit: (1) whether 18 U.S.C. § 2114(a) is a divisible statute; (2) if 18 U.S.C. § 2114(a) is divisible, whether the aggravated offense set forth in the language following the semi-colon constitutes a crime of violence for purposes of 18 U.S.C. § 924(c)(3) in light of <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), and <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015); and (3) whether the definition of "physical force" set forth in <u>Johnson v. United States</u>, 559 U.S. 133 (2010) applies to the definition of crime of violence set forth in 18 U.S.C. § 924(c)(3)(A).

## V.  Conclusion

Moody's § 2255 Motion and Supplemental § 2255 Motion are denied for the reasons stated above. However, the Court grants a certificate of appealability on the following issues: (1) whether

18 U.S.C. § 2114(a) is a divisible statute; (2) if 18 U.S.C. § 2114(a) is divisible, whether the aggravated offense set forth in the language following the semi-colon constitutes a crime of violence for purposes of 18 U.S.C. § 924(c)(3) in light of United States v. Davis, 139 S. Ct. 2319 (2019), and Johnson v. United States, 135 S. Ct. 2551 (2015); and (3) whether the definition of "physical force" set forth in Johnson v. United States, 559 U.S. 133 (2010) applies to the definition of crime of violence set forth in 18 U.S.C. § 924(c)(3)(A).

The Clerk of Court is directed to close case No. 1:16-cv-00472-MAT.

**SO ORDERED.**

*s/ Michael A. Telesca*

HON. MICHAEL A. TELESCA
United States District Judge

Dated:      February 3, 2020
            Rochester, New York